## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMI – GOVERNMENT EMPLOYEES PROVIDENT FUND MANAGEMENT COMPANY LTD, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH C. PAPA and PERRIGO COMPANY PLC, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Ami – Government Employees Provident Fund Management Company LTD ("Plaintiff"), individually and on behalf of all other persons similarly situated, by its undersigned attorneys, for its complaint against Defendants, alleges the following based upon personal knowledge as to itself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through its attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Perrigo Company plc ("Perrigo" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Perrigo common stock between April 21, 2015 and May 11, 2016, both dates inclusive (the "Class Period").  The action is also on behalf of all investors in Perrigo common stock as of November 13, 2015, which was the deadline by which Perrigo investors were required to tender their shares in connection with a tender offer made by Mylan N.V. ("Mylan").  This action seeks to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and its former Chief Executive Officer ("CEO"), Joseph Papa ("Papa").

2.     Perrigo, together with its subsidiaries, develops, manufactures, markets, and distributes over-the-counter ("OTC") consumer goods and pharmaceutical products worldwide. The Company was founded in 1887 and is headquartered in Dublin, Ireland.  Perrigo's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "PRGO."

3.     Mylan, like Perrigo, develops, licenses, manufactures, markets, and distributes generic, branded generic, and specialty pharmaceuticals worldwide.  On April 8, 2015, Mylan approached Perrigo's Board of Directors with an offer to purchase the Company for $205 per share.   Mylan's offer represented a nearly 30% premium to the Company's total market capitalization and was well received by investors.  During intraday trading on April 8, 2015, following news of the offer, the price of Perrigo stock climbed to nearly $216 per share.

4.     On April 21, 2015, Perrigo publicly rejected Mylan's offer.  Touting Perrigo's purportedly "durable competitive position and compelling growth strategy," the Company advised investors that the Mylan offer did "not take into account the full benefits of the Omega Pharma acquisition"—the Company's recently completed acquisition of Omega Pharma N.A.

2

("Omega")—and "substantially undervalues Perrigo and its growth prospects."  Even after Mylan

raised its offer to $235 per share, over the next six months Perrigo continued to publicly urge the

Company's shareholders to reject Mylan's offer.  Perrigo cited as reasons the 5% to 10% annual

organic revenue growth that Perrigo would achieve as a standalone entity and the synergies of the

Company's recent acquisition of Omega.

5.      On November 13, 2015, swayed by Perrigo's public opposition to Mylan's offer,

the majority of the Company's shareholders declined to tender their shares, causing the failure of

the tender offer.  As a result, Perrigo's share price fell $9.65, or 6.16%, to close at $146.90 on

November 13, 2015.

6.      Throughout the Class Period, Defendants made materially false and misleading

statements regarding the Company's business, operational and compliance policies. Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) Perrigo as a

standalone entity would be unable to achieve organic revenue growth of 5% to 10%; (ii) Perrigo's

competitive position and growth strategy were not "durable" but were in fact eroding; (iii) Perrigo

was facing serious issues integrating the Omega acquisition into the Company and had

significantly overpaid for Omega; (iv) for the foregoing reasons, among others, Mylan's offer did

not undervalue Perrigo; and (v) as a result of the foregoing, Perrigo's public statements were

materially false and misleading at all relevant times.

7.      On February 18, 2016, Perrigo issued a press release and filed a Current Report on

Form 8-K with the SEC announcing its net sales and adjusted net income for the quarter and year

ended December 31, 2015 (the "2015 8-K").  The 2015 8-K reported lower fourth quarter revenue,

margins, earnings and cash flow than investors had been led to expect and lowered the Company's

earnings guidance for 2016.  Perrigo also disclosed in the 2015 8-K an asset impairment charge of $185 million related to the recently acquired Omega assets.

8.     On this news, Perrigo's share price fell $14.77, or 10.17%, to close at $130.40 on February 18, 2016.

9.     Thereafter, on April 22, 2016, *Reuters* reported that Perrigo's CEO, Defendant Papa, had been named CEO of Perrigo's competitor, Valeant Pharmaceuticals ("Valeant").

10.    On this news, Perrigo's share price fell $7.33, or 5.7%, to close at $121.35 on April 22, 2016.

11.    On April 25, 2016, Perrigo confirmed Defendant Papa's resignation from the Company.  Concurrently, Perrigo significantly lowered its earnings guidance for 2016 and reported weak preliminary first quarter results, citing increased competitive pressures and weaker than expected performance by the Company's Omega segment.  Perrigo reported issues with the integration of Omega and announced that the Company was contemplating another impairment charge related to the acquisition, just two months after announcing the earlier $185 million impairment charge.

12.    On this news, Perrigo's share price fell $21.95, or 18%, to close at $99.40 on April 25, 2016.

13.    On May 12, 2016, Perrigo issued a press release and filed a Current Report on Form 8-K with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 8-K").  In the Q1 2016 8-K, the Company reported a net loss of $0.93 for the quarter, citing an additional $467 million impairment charge relating to the Omega acquisition.  Discussing Perrigo's performance on a conference call, the Company's new CEO, John Hendrickson ("Hendrickson"), stated that Perrigo's "recent track record of performance

4

against our own expectations is unacceptable" and indicated that he intended to target "realistic" forecasts that the Company could meet—thereby acknowledging that Perrigo, in its effort to thwart Mylan's takeover proposal, had previously asserted unrealistic and unattainable financial goals.

14.     On these disclosures, Perrigo's share price fell $3.71, or 4%, to close at $89.04 on May 12, 2016.

15.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

16.     The claims asserted herein arise under and pursuant to §§10(b), 14(e) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b), 78n(e) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

18.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  Perrigo's stock trades on the NYSE, located within this District.

## PARTIES

19.     Plaintiff, as set forth in the attached Certification, acquired Perrigo securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

20.     Defendant Perrigo is incorporated under the laws of Ireland, and the Company's principal executive offices are located at Treasury Building, Grand Canal Street, Dublin, Ireland. Perrigo's common stock trades on the NYSE under the ticker symbol "PRGO."

21.     Defendant Papa served as Perrigo's CEO and Chairman of Perrigo's Board of Directors from October 31, 2007 until April 24, 2016.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Perrigo, together with its subsidiaries, develops, manufactures, markets, and distributes OTC consumer goods and pharmaceutical products worldwide.  The Company was founded in 1887 and is headquartered in Dublin, Ireland.  Perrigo's stock trades on the NYSE under the ticker symbol "PRGO."

23.     Mylan, like Perrigo, develops, licenses, manufactures, markets, and distributes generic, branded generic, and specialty pharmaceuticals worldwide.  On April 8, 2015, Mylan approached Perrigo's Board of Directors with an offer to purchase the Company for $205 per share.  Mylan's offer represented a nearly 30% premium to the Company's total market capitalization and was well received by investors.  During intraday trading on April 8, 2015, following news of the offer, the price of Perrigo stock climbed to nearly $216 per share.

### Materially False and Misleading Statements Issued During the Class Period

24.     The Class Period begins on April 21, 2015, when Perrigo's Board of Directors issues a press release, entitled "Perrigo Board Unanimously Rejects Unsolicited Proposal From Mylan."  In the press release, the Company stated, in part, that Mylan's proposal "substantially undervalues Perrigo and its growth prospects."  Touting the Company's strong competitive position, the Company advised shareholders that Mylan's offer "would deny Perrigo shareholders the full benefits of Perrigo's durable competitive position and compelling growth strategy" and "does not take into account the full benefits of the Omega Pharma acquisition."

25.     On April 24, 2015, Mylan revised its offer, raising the per-share consideration to $60 in cash and 2.2 shares of Mylan stock, and designated the offer as a "firm intention"—a designation under the Irish Takeover Rules that legally obligated Mylan to make a tender offer for Perrigo's shares.  The offer was conditioned upon Mylan's receipt of at least 80% of outstanding shares of Perrigo stock, a threshold that Mylan would subsequently lower to only 50%.  On April 29, 2015, Mylan again raised its offer, to $75 in cash and 2.3 shares of Mylan stock per share of Perrigo stock.

26.     For the next six months, Perrigo undertook a public campaign to dissuade its shareholders from accepting Mylan's proposal.  Citing its purportedly strong organic growth, disciplined approach to future acquisitions, and transparent corporate governance policies, Perrigo told its shareholders that the Company had better prospects as a stand-alone entity.

27.     On May 6, 2015, Defendant Papa spoke for the Company at the Deutsche Bank Health Care Conference.  Making his "standalone case for the Perrigo Company," Papa projected organic revenue growth of 5% to 10% per year and touted "tremendous revenue synergies" that the Company would gain from integrating Omega into its business.

28.     On June 2, 2015, at the Jefferies Global Healthcare Conference, Defendant Papa again spoke for the Company.  Papa advised the Company's investors to consider Perrigo's "long-term standalone strategy," which he claimed would "create value for [Perrigo's] shareholders."  Once again, Papa cited the benefits of the Omega acquisition, which he described as "immediately accretive," and projected a 5% to 10% annual growth rate for the Company.

29.     On August 5, 2015, Perrigo hosted a conference call with investors and analysts to discuss the Company's financial and operating results for the quarter ended June 30, 2016.  On the call, Defendant Papa once again characterized the Omega acquisition as a key driver of the

Company's success as a stand-alone company, describing Omega and its purported revenue synergies as "tremendously important to [Perrigo's] future." Papa provided an update on Omega's integration into the Company and told investors and analysts that Perrigo had "delivered on our Omega integration plan" and "achieved great operational efficiencies and productivity improvement." Papa also touted Perrigo's corporate culture, assuring investors of the Company's commitment to "providing highly transparent financial and operational results."

30.     On September 14, 2015, Mylan officially commenced its tender offer to Perrigo shareholders.  Under the terms of Mylan's tender offer, Perrigo shareholders would receive consideration of $75 in cash and 2.3 Mylan ordinary shares in exchange of each Perrigo ordinary share.  The deadline to tender shares was November 13, 2015.  Mylan presented its offer as a choice between (i) a "highly attractive offer" in a combined entity with the "exciting potential for growth and value creation" or (ii) no cash upfront, the risk of a decline in Perrigo's share value, while "weathering the delays and potential execution and integration risk inherent in Perrigo's standalone strategy."  Meanwhile, Perrigo continued to trumpet its stand-alone strategy while denying Mylan's assertions that the Company's business entailed significant execution and integration risk.

31.     On September 17, 2015, Perrigo hosted a conference call with investors and analysts to recommend that Perrigo shareholders reject Mylan's tender offer.  During the conference call, Defendant Papa described Mylan's offer as "not even in the right ZIP code, when compared to Perrigo's stand-alone value."  Once again, Papa reiterated the purported success of the Omega acquisition, which he characterized as "outstanding" and an example of Perrigo's ability to "consistently . . . execute on value-accretive deals."  Papa unequivocally stated that "[i]n

on year, when you look at Perrigo, you will see a bigger, stronger company delivering value well above Mylan's offer today."

32.     On September 17, 2015, Perrigo went so far as to file a lawsuit against Mylan in the Southern District of New York, accusing Mylan of misrepresenting the proposed benefits of a Mylan-Perrigo merger.

33.     Perrigo's aggressive public campaign against Mylan's tender offer had the desired effect.  On November 13, 2015, the majority of the Company's shareholders declined to tender their shares, making the tender offer a failure.  As a consequence of the tender offer's rejection, Perrigo's share price fell by $9.65, or 6.16%, to close at $146.90 on November 13, 2015.

34.     Perrigo spent a total of nearly $87 million staving off Mylan's merger proposal and convincing its shareholders that the deal was not in their best interests.  After the tender offer's failure, Defendant Papa and other Perrigo executives received some $3.5 million for "their key contributions related to Mylan's takeover attempt."

35.     The statements referenced in ¶¶ 24 and 26-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Perrigo as a standalone entity would be unable to achieve organic revenue growth of 5% to 10%; (ii) Perrigo's competitive position and growth strategy were not "durable" but were in fact eroding; (iii) Perrigo was facing serious issues integrating the Omega acquisition into the Company and had significantly overpaid for Omega; (iv) for the foregoing reasons, among others, Mylan's offer did not undervalue Perrigo; and (v) as a result of the foregoing, Perrigo's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

36.     On February 18, 2016, Perrigo issued a press release and filed a Current Report on Form 8-K with the SEC announcing its net sales and adjusted net income for the quarter and year ended December 31, 2015.  The 2015 8-K reported lower fourth quarter revenue, margins, earnings and cash flow than investors had been led to expect and lowered the Company's earnings guidance for 2016.  Perrigo also disclosed in the 2015 8-K an asset impairment charge of $185 million related to the recently acquired Omega assets.

37.     On this news, Perrigo's share price fell $14.77, or 10.17%, to close at $130.40 on February 18, 2016.

38.     Thereafter, on April 22, 2016, *Reuters* reported that Perrigo's CEO, Defendant Papa, had been named CEO of Perrigo's competitor, Valeant.

39.     On this news, Perrigo's share price fell $7.33, or 5.7%, to close at $121.35 on April 22, 2016.

40.     Following these disclosures, analysts and the media immediately questioned Perrigo's prior representations regarding its competitive position and the success of the Omega acquisition.  Jim Cramer, host of CNBC's program *Mad Money*, reminded investors that "Papa had come on *Mad Money* and talked about how the Mylan bid dramatically undervalued Perrigo . . . That was clearly untrue."  Likewise, Wells Fargo analysts downgraded Perrigo stock, stating that "Perrigo management set unrealistic and aspirational earnings guidance in its effort to defend against Mylan's hostile bid."

41.     On these disclosures, Perrigo's share price fell by $21.95, or 18.09%, to close at $99.40 on April 25, 2016, the next trading day, erasing some $3.1 billion in market value.

42.     On May 12, 2016, Perrigo issued a press release and filed a Current Report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016.  In the Q1 2016 8-K, Perrigo reported a net loss of $0.93 per share for the quarter, a loss that Perrigo subsequently revised upward to $2.34 per share.  The Company attributed the loss largely to an additional $467 million impairment charge related to the Omega acquisition. Along with the earlier $185 million impairment charge, the Company has written down the value of Omega by more than $650 million in total—merely months after trumpeting the value of the Omega acquisition in its ultimately successful campaign against Mylan's tender offer.

43.     Discussing Perrigo's performance on a conference call that same day, the Company's new CEO, Hendrickson, stated that Perrigo's "recent track record of performance against our own expectations is unacceptable" and indicated that he intended to target "realistic" forecasts that the Company could meet, thereby acknowledging that Perrigo, in its effort to thwart Mylan's takeover proposal, had previously asserted unrealistic and unattainable financial goals.

44.     On these disclosures, Perrigo's share price fell $3.71, or 4%, to close at 9.40 on May 12, 2016.

45.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Perrigo securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein,

11

the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Perrigo securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Perrigo or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Perrigo;

- whether the Defendant Papa caused Perrigo to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Perrigo securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

52.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Perrigo securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Perrigo securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Perrigo securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Perrigo

securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Perrigo securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Perrigo's finances and business prospects.

59.      By virtue of their positions at Perrigo, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As a senior managers and director of Perrigo, the Defendant Papa had knowledge of the details of Perrigo's internal affairs.

61.     Defendant Papa is liable both directly and indirectly for the wrongs complained of herein.  Because of his position of control and authority, Defendant Papa was able to and did,

directly or indirectly, control the content of the statements of Perrigo.  As an officers and director of a publicly-held company, Defendant Papa had a duty to disseminate timely, accurate, and truthful information with respect to Perrigo's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Perrigo securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Perrigo's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Perrigo securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

62.     During the Class Period, Perrigo securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Perrigo securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Perrigo securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Perrigo securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against Defendant Papa)**

65.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Defendant Papa participated in the operation and management of Perrigo, and conducted and participated, directly and indirectly, in the conduct of Perrigo's business affairs.  Because of Defendant Papa's senior position, he knew the adverse non-public information about Perrigo's misstatement of income and expenses and false financial statements.

67.     As an officer and director of a publicly owned company, Defendant Papa had a duty to disseminate accurate and truthful information with respect to Perrigo's financial condition and results of operations, and to correct promptly any public statements issued by Perrigo which had become materially false or misleading.

68.     Because of his position of control and authority as a senior officer, Defendant Papa was able to, and did, control the contents of the various reports, press releases and public filings

17

which Perrigo disseminated in the marketplace during the Class Period concerning Perrigo's results of operations.  Throughout the Class Period, Papa exercised his power and authority to cause Perrigo to engage in the wrongful acts complained of herein.  Defendant Papa, therefore, was a "controlling persons" of Perrigo within the meaning of Section 20(a) of the Exchange Act. In this capacity, he participated in the unlawful conduct alleged which artificially inflated the market price of Perrigo securities.

69.     By reason of the above conduct, Defendant Papa is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Perrigo.

## COUNT III

**(Violations of Section 14(e) of the Exchange Act Against All Defendants**

70.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     Section 14(e) of the Exchange Act provides that it is "unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer."

72.     Defendants' conduct violated their respective obligations under Section 14(e) because Defendants made the false statements and omissions complained of herein concerning the strength of Perrigo's business in connection with Mylan's tender offer.

73.     The misstatements and omissions complained of herein were material, because a reasonable investor would have deemed those facts important in determining whether to tender its shares of Perrigo stock in connection with the tender offer.

74.     Defendants intentionally or recklessly engaged in acts, practices and a course of conduct that was fraudulent, deceptive or manipulative when issuing their false statements in violation of Section 14(e).

75.     As a direct and proximate result of Defendants' violations of Section 14(e), Plaintiff and the Class incurred significant damages.

76.     By reason of the above conduct, Defendants are liable pursuant to Section 14(e) of the Exchange Act for the violations committed by Perrigo.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 21, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

*Idit  Cohen*

1.    I, *Amit  Muchtar*_____, on behalf of Ami – Government Employees Provident Fund Management Company LTD ("Ami"), make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Perrigo Company plc ("Perrigo" or the "Company") and authorize the filing of a motion on behalf of Ami for appointment as lead plaintiff.

3.    Ami did not purchase or acquire Perrigo securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    Ami is willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Perrigo securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of Ami's transactions in Perrigo securities during the Class Period.

6.    During the three-year period preceding the date on which this Certification is signed, Ami has not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    Ami agrees not to accept any payment for serving as a representative party on behalf

of the class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

Executed _15. 6. 2016_
       **(Date)**

AMI GOVERNMENT
EMPLOYEES PROVIDENT FUND MANAGEMENT
COMPANY LTD

**(Signature)**

AMIT MUCHTAR. CEO
**(Type or Print Name)**

Idit Cohen. Director

**PERRIGO COMPANY PLC (PRGO)**

**AMI - Government Employees**
**Provident Fund Management**
**Company LTD**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 6/18/2015 | Purchase | 1,878 | 188.5700 |
| 11/15/2015 | Purchase | 3,500 | 149.5700 |
| 12/27/2015 | Purchase | 4,350 | 148.2900 |
| 1/13/2016 | Purchase | 865 | 146.9200 |
| 1/13/2016 | Purchase | 11,220 | 147.0600 |
| 2/16/2016 | Purchase | 73 | 140.5100 |
| 2/17/2016 | Purchase | 23 | 141.8100 |
| 2/22/2016 | Purchase | 50 | 127.4100 |
| 2/29/2016 | Purchase | 28 | 129.0500 |
| 5/10/2016 | Purchase | 126 | 94.2700 |
| 1/13/2016 | Sale | 865 | 146.9200 |